No. 10.—WILLIAM P. JONES, plaintiff in error, *vs.* BENJ. B. KEATON, defendant in error.

A new trial granted on the ground that the verdict of the jury is contrary to evidence.

Assumpsit, and motion for new trial, from Baker Superior Court. Tried before Judge ALLEN, at May Term, 1857.

This was an action brought by William P. Jones, against Benjamin B. Keaton, administrator of Joseph J. Montgomery, deceased, for the recovery of $610 25, for work done for, and cash lent to intestate, &c. as per bill of particulars annexed to the declaration.

### *Brief of Evidence—For Plaintiff.*

*James J. Keaton,* swore that he gave a note to plaintiff for $187 50, and he paid said note to William W. Cheever; he could not read, and does not know how the note was payable; it was traded by the intestate, Joseph J. Montgomery to Cheever—the note was given to Jones in a negro trade.

*Sam. B. Wright,* swore that plaintiff went on the river as a box hand for defendant two or three trips from Newton to Apalachicola, and that he took about fourteen days to make a trip, and a box hand was worth about a dollar per day. That plaintiff worked on a house for defendant, the building of which was worth seventy-five dollars; does not know how long he worked on the house, and there were other parties at work on the house at the time; plaintiff's work on the house was worth a dollar a day.

*Newton B. Shult,* swore that plaintiff worked for defendant on the river as much as two trips to Apalachicola, and it took on an average eleven days to make the trip, and a hand was worth about $1 per day. That plaintiff hewed timber for two boxes worth $10 a piece, and built a house worth seventy-five dollars. It was usual for employers of hands on the river to pay their expenses at Apalachicola;

Montgomery admitted in his life-time, that he had about $100 of plaintiff's money in his hands. That Jones made Montgomery a keeper of his money and papers; a sort of guardian. Plaintifl here closed.

*For Defendant :.*

*Abraham Carlisle,* examined by commission, answers, that he knows the parties; that he had a conversation with plaintiff a short time after Montgomery's death, in which plaintiff said in substance, in reply to an inquiry addressed to him, that he, Montgomery was owing him but very little; he said that he was behind with him for work on his, Montgomery's, dwelling house, twenty-five or thirty-five dollars, and with his, plaintiff's, grocery, but not much; though he did not state the exact amount. Upon enquiry as to Montgomery's indebtedness for work done on the river, he replied that he was not behind with him, plaintiff, anything; it was but little. Joseph Montgomery died between the 5th and 8th of January, 1854; it may be 1853, and now I think, that was the time; and in Newton, Georgia. The conversation with plaintiff was a short time after Montgomery's death; a few days after; and it was at my (witness) house in Newton; witness' wife and children were in the house; no one else was present. I spoke nothing of a settlement, except that Montgomery had settled up with him about all, for work on the river; stated no precise amount due him, only as to the $25 or $30 due for work on the house; he said nothing of anything being due him from Montgomery for cash loaned, and for notes and cash deposited with him for safe keeping; nothing as to any other indebtedness than as before stated. Said nothing as to how or when Montgomery paid him. I am friendly with Jones; there is no person present at the taking of these depositions except the commissioners and myself.

Plaintiff in reply, introduced *James Johnson,* who swore, that he was acquainted with the character of Abraham Car-

lisle while he lived in Newton, and that he had none for truth and veracity; he could not swear that he would believe him on his oath in a Court of justice.

The jury found for the plaintiff four hundred and five dollars.

The defendant moved for a new trial, on the following grounds:

1st. Because, the evidence was not sufficient to authorize the jury to find a verdict for the sum of four hundred and five dollars in favor of the plaintiff.

2d. Because the evidence was not sufficient to authorize the jury to find a verdict for the sum of $187, the amount alleged by plaintiff as having been collected by defendant's intestate, on a note belonging to plaintiff, and made by James J. Keaton in a negro trade.

3d. Because the evidence was not sufficient to authorize a finding for the plaintiff a greater sum than $22, for work done on the river by plaintiff.

4th. Because the evidence was not sufficient to authorize a finding for the plaintiff for any amount, unless the plaintiff had successfully discredited the witness Carlisle, whose testimony was introduced by defendant.

5th. Because the witness Carlisle was not discredited by plaintiff.

6th. Because the jury found contrary to evidence, and to the weight of evidence.

The Court granted the motion, and plaintiff by his counsel excepts, and assigns the same as error.

W. E. SMITH, for plaintiff in error.

STROZIER & SLAUGHTER; and McCoy, for defendant in error.

Jones vs. Keaton.

*By the Court.*—McDonald, J. delivering the opinion.

The Court granted a new trial on the ground that the verdict of the jury was contrary to evidence.   Many of the items in the plaintiff's account are not proven at all.   No evidence was submitted as to money loaned.   The intestate admitted to one of the witnesses that he had one hundred dollars of plaintiff's money in his hands.   He does not specify the time at which he made the statement.   If Montgomery received from Cheever the $187 50-100, it may have been a part of that.   We think there is evidence enough to justify the conclusion that the money paid by Keaton on his note to Cheever, went into the hands of the intestate, and that the house was built by plaintiff, and was worth seventy-five dollars.

But the witness, Carlisle, testifies that after the death of Montgomery in a conversation with the plaintiff, he said that Montgomery was owing him but little, that he was behind with him twenty-five or thirty dollars, for work on his house, with his grocery, but not much.   There is no discrepancy between the testimony of Carlisle and that of the other witnesses.   The plaintiff's witnesses prove some of the items in plaintiff's account, but they say nothing, one way or the other, in regard to payments, and their evidence applies to a time before his death, and the intestate may have been indebted to plaintiff the several amounts testified to by them, and may also have paid them principally before his death.

Carlisle's evidence is perfectly consistent with the proof made by plaintiff's witnesses.   He does not deny but that the intestate may have owed the plaintiff every dollar proven by his witnesses, but he says that the plaintiff admitted to him, that at the time of intestate's death he owed him but little.   An attempt was made to discredit him ; but one witness only was introduced for that purpose and testified in a manner not very satisfactory.   He said that he knew his character when he lived in Newton, and that he had none for truth and veracity, and that he could not swear that he

would believe him on his oath in a Court of justice. But he does not say he would not believe him. This is one witness's oath against another, which is not sufficient of itself. This case must go back for a new trial, and the plaintiff will have time to look up witnesses to impeach, and the defendant witnesses to support his character.

Judgment affirmed.